UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF NEW YORK

---

In Re:

1:02-MC-18 (DNH)

PAUL S. HUDSON,

Chapter 7
Case No. 00-11683

Debtor.

---

**AFFIRMATION**
Adv. Proc. No. 01-90322

GREGORY G. HARRIS, TRUSTEE

Plaintiff,

-against-

PAUL S. HUDSON, PAUL J. HUDSON, WILLIAM DAVID HUDSON, WILLIAM B. HUDSON AS TRUSTEE OF WILLIAM DAVID HUDSON, an infant and STEPHEN HUDSON,

Defendants.

U.S. DISTRICT COURT
N.D. OF N.Y.
FILED
APR 12 2002
LAWRENCE K. BAERMAN, CLERK
ALBANY

2002 APR 10 PM 3:16
RECEIVED

---

MICHAEL D. ASSAF, ESQ., affirms as follows under the pains and penalties of perjury; to wit:

1. I am the duly appointed special counsel for the Chapter 7 Trustee, Gregory G. Harris, in connection with the bankruptcy estate of Paul S. Hudson ("Debtor"), and, as such, I am fully familiar with the facts and circumstances to which I testify herein. To the extent that I am not so personally familiar, I rely on discussions had with my client and review of his file maintained at my office.

2. I make this affirmation in opposition to the motion presently pending before this Court and filed on behalf of defendants, William B. Hudson, Trustee

f/b/o William D. Hudson and William D. Hudson for an Order withdrawing reference under 28 USC §157. The following are some background facts that will be helpful to the Court and these facts are undisputed; to wit:

## I. FACTUAL BACKGROUND

3. On December 21, 1988, Melina Hudson (the "Decedent"), the natural daughter of the Debtor, died in a plane crash in Locherbie, Scotland. At the time of her death, she was a resident of Albany, New York, as were her parents and at least two (2) of her three (3) brothers.

4. It is interesting to note that her brother Stephen, the lone "Ohio brother" at the time of the distribution of the net proceeds of the Ohio wrongful death action, was only fifteen (15) when Melina died and was likely living with his parents and siblings in Albany on the date of her death, which, if true, means that all distributees in this matter were New York domiciliaries at the happening of the event giving rise to the wrongful death cause of action. Stephen's "true" residence at the time of Melina's death is a fact unknown to the Plaintiff, which will be developed through discovery in this action.

5. On March 22, 1989, the Albany County (New York) Surrogate granted to Debtor limited letters of administration (the "New York Letters") to, *inter alia,* administer the Decedent's estate and to prosecute a wrongful death action. The Order granting the New York Letters required Debtor to come back to the Albany County Surrogate to approve the settlement of the wrongful death action. This fact was found in the Decision of the Honorable

Joseph C. Teresi dated November 23, 1998 in the action entitled *Corvetti v. Hudson, et al.,* Index No 3920-98, Albany County Supreme Court (the "Teresi Decision"). A copy of the Teresi Decision is attached for the Court's convenience as Exhibit "A".

6. On June 20, 1989, Debtor filed a New York State Resident Affidavit for his daughter and paid New York State taxes.

7. On or about December 12, 1989, Nicholas Gilman, Esq. was retained to pursue the wrongful death action on behalf of the Decedent's estate under and pursuant to the authority granted to Debtor by the New York Letters.

8. On December 19, 1989, Debtor, William Hudson and Melina Rossi brought a wrongful death action against Pan Am World Airways in Federal District Court in Cleveland, Ohio based upon Federal subject matter jurisdiction (Warsaw Pact) (the "Ohio Action"). This litigation could have been brought in Federal Court in any district (including New York) but was brought in Ohio as a result of the more favorable Ohio loss of society laws allowing greater recovery for a wrongful death than New York Law.

9. As a point of interest, there are two (2) other lawsuits pending in New York courts which were brought by Debtor as administrator of his daughter's estate and arising out of the wrongful death of his daughter. Unlike the Ohio Action, Debtor has not withdrawn as administrator of his daughter's estate in the New York litigation as a result of, as he claims, a conflict between his duties and interests as administrator and the interests of his creditors, the

stated reason for his withdrawal in the Ohio Action, even though the same conflict exists.

10. At the time that the Ohio Action commenced, an ancillary estate in Ohio had not been commenced. The Ohio Action was commenced, in part, under the authority given to Debtor under and pursuant to the New York Letters by the Albany County (New York) Surrogate, with respect to Debtor's participation as plaintiff therein.

11. On December 12, 1990, Debtor applied to the Cuyahoga County (Cleveland, Ohio) Probate Court seeking to commence an ancillary administration of the Decedent's estate.

12. In 1995, Debtor filed for protection from his creditors under Chapter 11 of the United States Bankruptcy Code in the Northern District of New York. After much contentious litigation, the case was finally dismissed on April 17, 1997.

13. Thereafter, and on or about November 10, 1997, one of Debtor's creditors, Richard Corvetti ("Corvetti"), obtained an order and judgment against the Debtor in the amount of $275,537.00, which judgment was affirmed by the Appellate Division, Third Department. This judgment remains unsatisfied to this day.

14. In 1997, the Ohio Action settled for $567,407.70. Debtor did not seek approval of the Albany Surrogate with respect to this settlement as he was required to do pursuant to the Albany Letters and, in fact, by the time of this

settlement he had resigned as a co-administrator in the Ohio ancillary probate proceeding citing, as a reason therefore, an alleged conflict of interest between the interests of his creditors and his interests as co-administrator.

15. On October 16, 1997, Debtor signed a form consenting to the distribution of the net proceeds of the Ohio Action to his wife and children and a final order of distribution was entered in the Cuyahoga County Probate Court.

16. At the time of the distribution of the proceeds thereof, only Stephen P. Hudson, a 26-year old son of Debtor, was living in Ohio, while the rest of the distributees lived on Lancaster Street in Albany, New York, where they had been living since before and after the year of Decedent's death. The status and/or duration of Stephen's residency in Ohio (or whether he was a resident of Ohio as of the date of Melina's death) is unclear.

17. In 1998, Corvetti brought a fraudulent conveyance action against Debtor and his sons in Albany County Supreme Court (Hon. Joseph C. Teresi, presiding) (the "Albany Action"), claiming, *inter alia,* that the Debtor's consent to the distribution to his sons of the net proceeds of the Ohio Action was a fraudulent conveyance in violation of New York Debtor and Creditor Law, as it resulted in Debtor receiving less of the net proceeds than to which he otherwise would have been entitled. This action resulted in the Teresi Decision, discussed in greater detail, *infra,* which denied Debtor's motion for summary judgment, in which Debtor alleged virtually the identical grounds as the basis for summary judgment and dismissal of Corvetti's complaint in

the Albany Action as does counsel Sayre in the current motion before this Court.

## II. THE TERESI DECISION

18. Initially, the Albany Action was dismissed as against Stephen P. Hudson ("SPH") and William David Hudson ("WDH"). With respect to SPH, it was found that the Albany County Supreme Court did not have personal jurisdiction over him. With respect to WDH, the minor child, an Albany County domiciliary, he did not contest personal jurisdiction, but it was found that his distribution was placed in a trust for his benefit, the trustee of which is William B. Hudson, his grandfather, an Ohio domiciliary. The Trust and the trustee were not named as defendants in the Albany Action, and they were found to be the proper parties defendant.

19. However, Teresi found that the complaint stated a cause of action against the sons as transferees of the "judgment debtor Paul S. Hudson", citing *Brown v. Kimmel*, 68 A.D.2d 896 (2d Dept. 1979). *Id.* At 13

20. Moreover, Teresi did not find merit in Debtor's argument that because the settlement of the Ohio Action occurred in Ohio and the net proceeds thereof were never distributed to the sons in New York that the complaint in the Albany Action failed to state a cognizable claim against the defendant sons under Article 10 of the Debtor and Creditor Law. Teresi found that judgment creditors are entitled to rely on their debtor's property "situated outside this State, assuming that there are jurisdictional grounds for doing so" , citing

*Southern Indus. v. Jeremais*, 66 A.D. 2d 178 (2d Dept. 1978). *Id.* at 13

21. Therefore, it is clear that the complaint in this action states a cause of action as against the defendant sons (and William B. Hudson, Trustee) as transferees of a judgment debtor (the Debtor herein) as Teresi has already decided that this is so.

22. Teresi also dealt with Debtor's argument that the Albany Supreme Court was barred from acting in the fraudulent conveyance action (i) as a result of the necessity of the Court to give "full faith and credit" to the orders of other courts; (ii) lack of subject matter jurisdiction; and (iii) *res judicata* and collateral estoppel concerns (collectively, the "Procedural Arguments"). These are the exact concerns counsel Sayre raises in his motion before this Court, as he cites to this Court that this case involves "state law non-bankruptcy issues exclusively". At pages 8-11 of the Teresi Decision, the Court addressed these concerns in the context of the Albany Action and found, in relevant part, as follows:

> *Defendants' further contention in support of dismissal is that this Court lacks subject matter jurisdiction over this action which is incorrect. Corvetti has premised this action on Article 10 of the Debtor and Creditor Law maintaining that defendants have fraudulently conveyed and/or received assets in violation thereof. The parties raise numerous, and largely irrelevant to this action, contentions relating to other court proceedings and attempt to greatly enlarge the scope of this action. In fact, this action does not and will not address matters within the exclusive jurisdiction of other courts or already decided therein. For example, this proceeding will not*

*serve as a collateral attack on the wrongful death Federal action...the Ohio Probate proceeding or the Albany County Surrogate proceeding...(t)his Court must give full faith and credit to those judgments on their merits...this Court must take judicial notice of orders of other courts and the wrongful death and intestacy laws of this State and other jurisdictions...and the records in the other ancillary proceedings may well become relevant on factual or legal disputes in this action. This action does not directly concern matters committed to the exclusive jurisdiction of other courts. Despite Defendants' extensive efforts to confuse the issue, this Court...certainly has subject matter jurisdiction over a dispute commenced by a judgment creditor to his judgment debtor's transfer of funds under this State's Debtor and Creditor law.*

*The court notes that this action seeks to challenge Paul S's conveyance of assets while insolvent and while a defendant in an action for money damages, without consideration and also with intent to defraud. While the Federal District Court accepted the parties' settlement of the wrongful death action and the Ohio Probate Court consented to the agreed upon distribution, principles of comity do not preclude this Court from entertaining Corvetti's action to set aside this conveyance as fraudulent under New York's Debtor and Creditor Law ...(see, Ehrlich Bober v. University of Houston, 49 NY 2d 574).*

*This action is not barred by principles of res judicata or collateral estoppel as defendants claim. Corvetti's claim that Paul S's consent to a wrongful death settlement...constituted a fraudulent conveyance...has not previously been fully litigated in or addressed by any other court so as to be barred by res judicata (see, Barristers Abstract Corp. v. Caulfield 241 AD2d 472 (2d Dept. 1997).*

*While the doctrine of collateral estoppel may operate to prevent the relitigation of certain issues and findings of fact determined in the ancillary*

> *proceedings, the issue under the Debtor and Creditor law is whether Paul S's conduct amounted to a fraudulent conveyance and whether it was with the intent to defraud his creditors such as Corvetti has not been resolved. The fact that Corvetti may have intervened or objected in several of the other court proceeding, (sic) in some of which he was and others he was not a party is not, as defendants' suggest, dispositive of whether the Debtor and Creditor law issues or claims have been decided so as to invoke the doctrines of res judicata or collateral estoppel. The decisions will be given full force and effect but do not preclude this claim raised in this action for the first time that the conveyances violation (sic) the Debtor and Creditor Law.*

23. However, there is no question but that the bankruptcy Court in this action will be called upon to determine whether Debtor's activity in consenting to the settlement of the Ohio Action and the distribution of the proceeds thereof to his sons constitutes a transfer in fraud of creditors under the New York Debtor and Creditor Law. This is all that is at stake here. There is no dispute over whether the sons received the money or whether there was any consideration paid for it when it was transferred to them. Indeed, there is no factual dispute whatsoever that would normally fall within the province of the jury to determine with respect to the moving defendants.

24. Therefore, if it is determined that Debtor, Paul S. Hudson, fraudulently conveyed all or a portion of his interest in the proceeds of the Ohio Action to his sons, they will have liability as downstream transferees to the Debtor's bankruptcy estate as a matter of law. I have attached the Teresi Decision and discussed it herein at length for the Court's benefit to show the Court that

despite counsel Sayre's attempts to obfuscate the issues in this case, the issues are quite narrow indeed.

25. The present motion is nothing more than another attempt by the Debtor and his family to remove these issues from Judge Littlefield's courtroom. The Debtor is on record that he felt that Judge Littlefield expressed bias and hostility toward him during the pendency of a companion adversary proceeding brought by Corvetti, which resulted in the denial of the Debtor's discharge. The Debtor has since moved seeking Littlefield's recusal from further proceedings in Debtor's bankruptcy case. That motion was denied.

## III. WITHDRAWAL OF REFERENCE

26. To determine defendants' right to withdrawal of reference, the bankruptcy court must determine whether (i) the present action is a "core" or "non-core" proceeding; (ii) whether the defendants have a right to jury trial in the first place, essentially an examination of whether this action is one at law or in equity; and (iii) if defendants are entitled to a jury trial, whether the same can be conducted by the bankruptcy court.

27. There is precious little dispute that a Trustee action for avoidance of a fraudulent transfer brought under and pursuant to State law is a "core" proceeding or an essentially core proceeding. *See, In re: 20/20 Sport Inc.*, 200 B.R. 972 (SDNY 1996), *Michaels v. Lomax (In re: Skil-Aire Corp.)* 142 B.R. 692 (D. N.J. 1992).

28. Generally, the question as to whether the defendants are entitled to a jury trial

in an adversary proceeding to recover a fraudulent conveyance will turn on whether they have in some way availed themselves of the jurisdiction of the bankruptcy court by filing a claim, or by participating in some way in the Debtor's bankruptcy case. In this case, the Trustee does not dispute that the moving defendants in this case have not "availed" themselves of the jurisdiction of the bankruptcy court in this matter.

29. However, the cause of action filed by the Trustee (although it does seek money damages) seeks the determination of the amount of and reversal of an alleged fraudulent conveyance which is a cause of action sounding in equity and, thus, there is no right to jury trial with respect to this cause of action. *See, Bennett v Genoa AG Center, Inc. (In re: Donald R. Bennett)* 154 B.R. 126 (NDNY 1992), *Moratzka v. Wencl (In re: Wencl),* 71 B.R. 879 (D.MN 1987).

30. In another case, a court found that a Chapter 7 debtor and his mother were not entitled to a jury trial of an action against them to set aside fraudulent conveyance and recover assets for a bankruptcy estate because the complaint was a core proceeding under 28 U.S.C. § 157 and no right to jury trial exists in core proceedings. *In re: Lee*, 50 BR 683 ( D. MD 1985) .

31. However, even if this Court were to disagree and find a right to jury trial in this proceeding, the reference need not be withdrawn and the Bankruptcy Court could conduct the jury trial. For example, the court in *In re: Heelo Corp. (Krafsur v. Clay)* (BC WD TX 1994) found that fraudulent conveyance

actions asserted by Trustee are "essentially core in nature" and the Defendants in *Clay* who did not file proof of claim or subject themselves to jurisdiction of Bankruptcy Court were entitled to jury trial. Nonetheless the Court found that the Bankruptcy Court could conduct the jury trial in these actions since the mere conduct of the trial with the assistance of the jury as fact finder is not, of itself, impermissible exercise of Article III powers by non-Article III court.

32. In a case involving a fraudulent conveyance from a debtor to his wife pursuant to a Separation Agreement, the Court did not see fit to withdraw the reference, finding that the Bankruptcy Court had the power to conduct a jury trial in a core proceeding under 28 U.S.C. § 157(b)(2) *In re: Stoecker*, 117 BR 342 (N.D. Ill 1990).

33. Other courts who have likewise found include the court in *Michaels v. Lomax, supra, and Atlas Fire Apparatus, Inc. v. Beaver, et al (In re: Atlas Fire Apparatus, Inc.)* 56 B.R. 927 (E.D.N.C. 1986).

34. In the event that this Court finds that it cannot conduct a jury trial in this matter, the Court should be aware that the District Court may delegate to the Bankruptcy Court responsibility for supervising discovery, conducting pre-trial conferences and other matters short of jury selection and trial *Official Comm. of Unsecured Creditors ex rel. Estate of Stansburg Poplar Place v. Schwartzman (In re: Stansburg Poplar Place)* 13 F.3d 122 (4th Cir 1993).

35. Moreover, the jury trial and non jury trial matters may be bifurcated and tried

separately. In *In re: Tureaud*, 70 BR 818 (N.D. OK 1987), the Court found that the Bankruptcy Court may proceed to a non-jury trial of a core proceeding under 28 U.S.C. § 157 prior to a jury trial of non-core proceeding (absent consent of parties to trial of non-core proceedings in Bankruptcy Court), even though there may be no remaining issues for determination by a jury following the non-jury trial. Such is the exact case here, where if it is found that a fraudulent conveyance has occurred, these moving defendants will have liability to the estate as a matter of law.

**WHEREFORE,** Plaintiff respectfully requests that this Court deny the pending motion of Defendants, William B. Hudson, Trustee and William D. Hudson, in its entirety, together with all such other and further relief as to this Court may seem just and proper.

Dated: April 10, 2002

O'CONNELL AND ARONOWITZ

By: ______________________
Michael D. Assaf, Esq.
Counsel for Plaintiff, Gregory G. Harris,
Chapter 7 Trustee
100 State Street
Albany, New York 12207
(518) 462-5601

G:\DATA\ATTORNEY\MDA\HARRIS\Hudson\Affopp1.TM.wpd